UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LESTER W. HILL,

              Plaintiff,

v.                                       Case No. 3:14-cv-764-J-39PDB

DAVID ALFORD
AN JOHN DOE,

              Defendants.

_____

**ORDER**

**I. Status**

Plaintiff Lester W. Hill, an inmate of the Florida penal system, is proceeding pro se in this action on his June 1, 2014 verified Complaint (Doc. #1; Complaint) filed pursuant to 42 U.S.C. § 1983. Hill names David Alford and a John Doe, both correctional officers at Suwannee Correctional Institution (SCI), as Defendants. Hill asserts a cause of action for excessive force in violation of the Eighth Amendment. Complaint at 2-8. As relief, Hill seeks declaratory relief, two hundred fifty thousand dollars ($250,000)

compensatory damages and twenty thousand dollars ($20,000) punitive damages from David Alford, two hundred thousand dollars ($200,000) compensatory damages and fifteen thousand dollars ($15,000) punitive damages from John Doe, costs, and any other relief that Hill is entitled. Id. at 9.

This cause is before the Court on Defendant's Motion for Summary Judgment (Doc. #17; Motion). Hill was advised of the provisions of Federal Rule of Civil Procedure 56, notified that the granting of a motion for summary judgment would represent a final adjudication of this case which may foreclose subsequent litigation on the matter, and given an opportunity to respond. See Summary Judgment Notice (Doc. #19). Hill responded. See Plaintiff's Brief in Opposition to Defendants' [sic] Summary Judgement [sic] Motion (Doc. #22; Response); Plaintiff's Statement of Contested Facts (Doc. #23; Statement).[1] Thus, this case is now ripe for review.

## II. Allegations in the Complaint

Hill alleges that, while confined in close management segregation at SCI, on February 16, 2014 while housed in mental health overflow, Alford, and three other officers, Cox, Hayes, and the dorm Sergeant, approached him. Complaint at 2. Alford stood outside his cell and threatened him, stating that what happened the day before was not over and that Hill still owed "taxes." Id.

---

[1] The Court will refer to the exhibits appended to Defendant's Motion as "D. Ex." and to the exhibits appended to Hill's Response as "P. Ex."

Alford gave Hill two options: (1) to "cuff up and come out to the nurses triage station, (where there are no surveillance cameras) and let [the officers] take care of business" or (2) the officers "will assemble the extraction team and come in and beat the shit out of plaintiff anyway." Id. Hill told Alford to leave him alone because he did not owe any "taxes" as he was sprayed with six cans of mace the previous day and roughed up by the extraction team. Id. at 3. Alford responded that "this is business not personal." Id. Hill then pleaded to the dormitory Sergeant, but was rebuffed and told that "what's done is done ... he has been working in DOC[2] since 1989 and has no understanding for plaintiff, and whether plaintiff likes it or not its [sic] going down." Id. Hill then told the officers that he was not coming out of his cell, and the officers dispersed. Id.

Thirty minutes later, Alford and Cox returned and told Hill to "cuff up for a cell search and to go to the nurses triage station to have his vital signs checked." Id. Hill responded that he thought the officers would beat him, and Alford threatened that he would kick Hill's teeth down his throat before turning and leaving. Id. Twenty or thirty minutes later, all four officers returned, attempting to cajole Hill out of his cell, but Hill again refused and the officers left. Id. at 4. Thirty to forty-five minutes later, Alford and Cox returned with their supervisor, Lieutenant

---

[2] Florida Department of Corrections.

Wilson, because Hill had refused to leave the cell.  Id.  Alford again told Hill to "cuff up for a cell search and to have his vitals checked by the nurse," but Alford again refused, explaining to Wilson that the officers had previously threatened to beat him. Id.  Only after Wilson assured him that the officers would not "mess with plaintiff in front of him[,]" Hill reluctantly consented to cuffing and to leave his cell.  Id.

Then, Alford took Hill to the nurses' triage station while Cox and Wilson stayed to search his cell.  Id. at 4-5.  As Hill was lead to the nurses' station, he saw Sergeant Limblade and an unidentified correctional officer, John Doe, in the laundry room directly across from the station and Nurse Lemming in the nurses' station.  Id. at 5.  Once inside the nurses' station, Alford severely beat Hill, smashing his face into a concrete wall, tripping Hill to the ground, and repeatedly punching and kicking Hill in his face and upper body.  Id. at 5-6.  During this time, John Doe entered the nurses' station and also kicked Hill in his face and upper body.  Id. at 6.  Still in handcuffs behind his back, Hill pleaded with the Defendants to stop, but the Defendants continued and stomped Hills' head into the concrete ground.  Id. After approximately twenty kicks, the Defendants stopped, leaving Hill nearly unconscious and bleeding from a cut over his right eye. Id. at 6-7.  Hayes and the Echo dormitory Sergeant replaced the two Defendants, picked Hill off the floor, lifted him to his feet, and

steadied him so that nurse Lemming could inspect Hill's injuries. Id. at 7. Nurse Lemming cleaned Hill's wounds, bandaged the major lacerations, and directed the officers to take Hill to the infirmary for further treatment. Id. Before leaving, Hill asked Nurse Lemming to "remember what they did to him, and what she witnessed." Id. Hill was then taken to a cell to await transfer to the infirmary. Id. While in the cell, Captain W. Cannon approached him and told Hill that they were now even for Hill's prior disrespect to Cannon. Id.

Hill was then transferred to the infirmary for ten days of treatment for his injuries, pain, and infection. Id. Hill summarizes his injuries:

> [P]laintiff suffered many painful and significant physical and emotional injuries. Plaintiff suffered several deep lacerations to his face that would require multiple deep tissue stitches. As a result of these injuries plaintiff's face is now permanently scarred in several places. Plaintiff suffered a very severe, painful and debilitating injury to his left upper jaw, which (3) months after the original injury plaintiff is still experiencing pain and disability with his jaw. Plaintiff also suffered a painful injury to his upper left ribs/sternum region, plaintiff believes he suffered fractured ribs or severely bruised ribs, x-rays were taken however plaintiff is unaware of the results at this time. Plaintiff also suffered injury to his neck, and his right knee that caused plaintiff many days of pain and suffering. Plaintiff suffered a concussion from the trauma to his head and skull; plaintiff suffered severe visual impairment, extreme dizzyness [sic] and disorinetation [sic] for days, confusion, and nausea and vomiting.

> Other injuries that plaintiff suffered were large multiple contusions to his head and skull, (2) blackend [sic] and swollen eyes, as well as other minor abrations [sic] to plaintiff's face and body.

Id. at 8.  Hill then describes his psychological and emotional injuries: "plaintiff suffered humiliation, severe anxiety, and depression.  Plaintiff's mental state has been seriously impacted by the violence of these defendants against plaintiff.  Plaintiff is currently being treated with therapy and psychotropic medications by mental health to help plaintiff alleviate and cope with his ongoing mental health issues."  Id.

### III.  Summary Judgment Standard

The Eleventh Circuit set forth the summary judgment standard.

> Summary Judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  The substantive law controls which facts are material and which are irrelevant.  Raney v. Vinson Guard Service, Inc., 120 F.3d 1192, 1196 (11th Cir. 1997).  Typically, the nonmoving party may not rest upon only the allegations of his pleadings, but must set forth specific facts showing there is a genuine issue for trial.  Eberhardt v. Waters, 901 F.2d 1578, 1580 (11th Cir. 1990).  A pro se plaintiff's complaint, however, if verified under 28 U.S.C. § 1746, is equivalent to an affidavit, and thus may be viewed as evidence.  See Murrell v. Bennett, 615 F.2d 306, 310 n. 5 (5th Cir. 1980).  Nevertheless, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge."  Fed.R.Civ.P. 56(c)(4).  "[A]ffidavits based, in part, upon information and belief, rather than personal knowledge, are insufficient to withstand a

motion for summary judgment." <u>Ellis v. England</u>, 432 F.3d 1321, 1327 (11th Cir. 2005).

As we've emphasized, "[w]hen the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts ... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[T]he mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Unsupported, conclusory allegations that a plaintiff suffered a constitutionally cognizant injury are insufficient to withstand a motion for summary judgment. <u>See</u> <u>Bennett v. Parker</u>, 898 F.2d 1530, 1532-34 (11th Cir. 1990) (discounting inmate's claim as a conclusory allegation of serious injury that was unsupported by any physical evidence, medical records, or the corroborating testimony of witnesses).

<u>Howard v. Memnon</u>, 572 F. App'x 692, 694-95 (11th Cir. 2014) (footnote omitted).

### IV. Defendant's Motion

In his Motion, Alford contends that he is entitled to summary judgment because (1) Hill failed to show a constitutional violation for excessive use of force; (2) Alford is entitled to qualified immunity; and (3) even if Hill had provided evidence of a constitutional violation, he is precluded from compensatory or punitive damages under the Prisoner Litigation Reform Act (PLRA)

- 7 -

because his injuries were not more than de minimis.   Motion at 6-14.   In support of his motion, Alford provides declarations of Alford and Worthey,[3] D. Exs. B and C; two Use of Force packets, D. Exs. A and D; and two disciplinary reports issued to Hill on February 16, 2014, D. Exs. E and F.

The first use of force report describes a very different version of February 16, 2014.   In the report, Alford summarizes the incident as a reactionary physical force.   Ex. A at 1.   Alford described the incident that occurred at 9:24 a.m.:

> I was escorting the inmate from his assigned cell to the medical triage room for the purpose of medical assessment[. W]hile inside the medical room the inmate became physically combative by attempting to break my custodial grasp and attempting to lunge at the on duty nurse. At this time, I redirected inmate Hill to the floor chest down utilizing my body weight[.   ]I pinned Inmate Hill to the ground[. A]t this time all force was ceased. I used only the minimum amount of force necessary to bring inmate Hill into compliance.

Id.   This report further states that there were no staff injuries, but that Hill received a "0.5 inch laceration to [the] chin [and a] 0.25 inch laceration [to the] left eyebrow." Id. at 2.

The second use of force report, written by an Officer Hessley, describes an incident of reactionary physical force that occurred

---

[3] Nurse Lemming subsequently changed her last name to Worthey. D. Ex. C.  For consistency, the Court will refer to her as Nurse Lemming.

shortly after the first, at 9:48 a.m.. D. Ex. D.  Officer Hessley

explains that,

> While assigned as Internal Security Officer, I
> was escorting Inmate Hill from E-Dormitory to
> Medical assisted by Officer Austin Dampier.
> Upon reaching the main unit medical treatment
> room doorway I observed a metallic object in
> Inmate Hill's right hand.  I ordered Inmate
> Hill several time to relinquish the metallic
> item in his hand to no avail.  As a result of
> Inmate Hill's refusing all verbal orders to
> relinquish the item in his hand and to prevent
> injury to [m]yself or Officer Dampier, I
> maintained a hold of Inmate Hill's upper right
> arm with my left hand and placed my right hand
> on Inmate Hill's right shoulder and forced
> Inmate Hill to the floor chest first assisted
> by Officer Dampier.  Subsequent to being
> forced chest first on the floor I gave Inmate
> Hill several verbal orders to relinquish the
> metallic [i]tem in his hand to which he
> reluctantly complied[. A]t this time all
> force ceased.  Only the minimum amount of
> force necessary was used to bring Hill into
> compliance.

Id. at 1.  This report also documents Hill's injuries as

"[l]acerations to right and left eyebrow, bottom of chin, [s]wollen

area on forehead and cheek, [a]brasion to right shoulder." Id. at

2.  Further, this report notes that Inmate Hill would receive

disciplinary reports for possession of or manufacture of weapons,

ammunition or explosives and disobeying a verbal or written order.

Id.  It also notes that this use of force was further witnessed by

Officer Rodgers, Nurse Crews, and Nurse Batson.  Id.  This report

describes additional injuries:

> Laceration to right side of [right] eyebrow:
> 2cm x 1 mm x >1mm, Laceration to [left]

- 9 -

> eyebrow 2" x 1 mm wide, jagged edges, laceration to bottom of chin 2" x 1mm and deep with jagged edges, swollen area approx. size and shape of a grape to [right] forehead, two swollen areas approx. size and shape of a grape to [right] forehead, two swollen areas approx[.] size and shape of a grape to [right] cheek. 2" abrasion to [right] shoulder, laceration to top [right] side of upper lip 1 cm x 1 mm.

Id. at 10.  The two disciplinary reports describe the February 16, 2014 events in the same manner.  See D. Exs. E and F.  Hill pled guilty to the disciplinary report for possession of a weapon.  D. Ex. E at 1.  A picture of the metallic weapon that was confiscated during the second use of force is included.  Id. at 11-13.  This report also notes that Hill was transferred to Santa Rosa Correctional Institute Annex (SRCIA) following this incident on March 3, 2014.  Id. at 1.  The disciplinary report for attempting to assault a staff member was dropped because it was not timely processed.  D. Ex. F.

In his declaration, Alford explains that his use of force was a reaction to Hill's lunging at Nurse Lemming.  D. Ex. B at 1.  He denies punching, kicking, stomping, or otherwise hitting Hill, except for the minimal use of force required to take him to the floor and subdue him.  Id. at 1-2.  He claims that Nurse Lemming was in the medical triage room and witnessed his use of force.  Id. at 2.  After Alford regained control, he called for backup, left Hill with Officer Hayes and Sergeant Rogers, and had no further contact with Hill.  Id. at 1-2.  Nurse Lemming, in her declaration,

corroborated Alford's description that Hill lunged at her while she was attempting to take his vital signs, prompting Alford's use of force.  D. Ex. C at 1.  She also confirms that she conducted a post use of force physical, documenting Hill's lacerations, notifying the doctor, and referring Hill to the main unit medical department. Id.  Nurse Lemming also confirms that Alford did not hit, kick, stomp, punch, or otherwise harm Hill and that she did not witness Alford push or throw Hill into a wall, but that she did complete a witness statement for the related incident report.  Id.

Based on this evidence, Alford first argues that Hill fails to provide sufficient evidence to show a constitutional violation. Alford argues that Hill's "version of events is implausible in light of Nurse Lemming (Worthey's) declaration [because] any force that was used on HILL was used in a good-faith effort to restore order and protect Nurse Lemming from HILL's attempt to break away from ALFORD's custodial grasp and lunge at her."  Motion at 8.  He claims that the first post use of force medical records reflect only two minor lacerations, making it implausible that Hill received a brutal beating.  Id.  Alford further argues that Nurse Lemming, rather than confirming Hill's version, as he claimed she would, wholly contradicts Hill and supports Alford.  Id.  Next, Alford argues that he is protected by qualified immunity because Hill has not shown that Alford violated Hill's rights, but instead that Alford's actions were reasonable.  Id. at 11-12.  Finally,

Alford argues that Hill is not entitled to compensatory or punitive damages because the minor lacerations on his face were not more than de minimis injuries, as required by the PLRA.  Id. at 14. Thus, Alford concludes, summary judgment should be granted his favor.

## V. Hill's Response

In response, Hill provides the following exhibits: (1) a declaration by Hill, P. Ex. A; (2) grievances Hill filed at SRCIA about the February 16, 2014 incident, P. Ex. B; (3) letters Hill sent to the FBI and Florida Department of Law Enforcement (FDLE) regarding the February 16, 2014 incident, P. Ex. C; (4) Hill's radiology reports and sick call requests, P. Ex. E; (5) Alford's responses to Hill's requests for admissions and interrogatories, P. Ex. G; and (6) documentation provided by Alford related to the two uses of force against Hill on February 16, 2014, disposition papers of Hill's disciplinary report regarding attempted assault of a staff member, and the declarations of Alford and Nurse Lemming, P. Exs. D, F, H, I, J, K.

In his sworn declaration, Hill generally disputes Alford's depiction of the February 16, 2014 incident and reiterates his verified allegations in the complaint that he was beaten without provocation as some type of payback by the SCI officers.  P. Ex. A. Hill does add some additional information.  He states that Alford's beating was a punishment and retaliation for his disrespect the

prior day to Officer Linblade and Captain Cannon.  Id. at 4, 9.  He also adds that, after the beating, Nurse Lemming cleaned his wounds, but did not ever ask him about pain or how he was feeling. Id. at 5.  Hill further explains that he tried to explain to Lieutenant John Wilson, who was conducting the post use of force video operations, that he had just been beaten and that his allegations were recorded.  Id. at 5-6.  Hill further claims that, while being transported to medical, he spoke with the acting duty warden, Major Ronny Morgan, and explained that he had just been beaten.  Id. at 6.

Hill does generally agree with the substance of Alford's description of the second use of force.  In fact, he admits that he was carrying a "small dull razor blade that was wrapped in a coating of soft black putty."  Id. at 7.  Hill further states that "[t]his razor was not in the form of a weapon, or intended as one." Id.  He admits that Officers Hessley and Dampier noticed it while they were waiting outside the infirmary, restrained him on the ground, without causing any injury, and took the razor.  Id. at 6-7.  He notes, however, that he was not punched, kicked, hit, or harmed during this incident but instead was restrained until he released the contraband.  Id. at 7.  Hill also states that this was a legitimate use of force, and he did not allege or file any complaints against these officers.  Id.

Hill claims that he then was taken into the infirmary where the nurses better documented his injuries from the prior beating. Id. He remained in the infirmary for ten days where he underwent a procedure to suture the major lacerations on his face, received antibiotics and pain medication, underwent x-rays of his skull, and had his vital signs checked regularly. Id. at 7-8. Hill claims that Alford falsely accused him of attempting to assault Nurse Lemming in his disciplinary report as a guise or pretext for the beating. Id. at 8. Hill notes that this report was not processed, and he was not disciplined. Id.

Hill further describes an incident with Nurse Lemming on his last day in the infirmary, on February 26, 2014 at approximately 2:30 p.m. Id. at 8. Nurse Lemming approached Hill and asked why he kept mentioning her, that he needed to stop because she had a family to take care of, and that she was in the nurses' station but is trained to leave whenever there is any use of force. Id. at 8-9. Hill responded that he couldn't let it go after receiving such a beating and that he was not trying to cause her problems, but only mentioned her because she was there. Id. Hill informed Nurse Lemming that Alford claimed that Hill had lunged at Lemming, and Lemming responded that "maybe" he had. Id. at 9. Hill rebuffed her and asked her to do the right ting and tell the truth. Id. Forty-five minutes later, Hill was discharged from the infirmary. Id.

Hill's additional documentation consistently supports his version of events.  In his grievances, which could not be filed until March 7, 2014 at SRCIA, where he first received papers, forms and pens, Hill similarly describes the incident.  P. Ex. B.  Hill receives an initial denial, appeals, and the appeal is similarly denied.  Id.  On April 16, 2014 and May 18, 2014, respectively, Hill wrote letters describing the February 16, 2014 incident to the FBI and FDLE.  P. Ex. C.  On February 18, 2014, Hill received a radiograph of the skull due to multiple head and facial wounds showing there were no fractures to Hill's skull and a radiograph of the chest due to pain showing no acute concerns.  P. Ex. E. at 1-3.  Hill's sick-call requests document continuing pain in his jaw through May 2014.  Id. at 4-5.  In the discovery documents provided, Alford admits some of Hill's background assertions, but claims to be without knowledge to much of the relevant requests because institutional rules prevented him from any contact with Hill after the use of force and because he is no longer employed by FDOC and does not have access to FDOC documents.  P. Ex. G.

Based on these documents and his verified Complaint, Hill argues that summary judgment would be inappropriate as there are clear disputes of material facts.  Response at 5.  Hill then argues that Alford is not entitled to qualified immunity because there is a factual dispute regarding whether he used excessive force.  Id. at 6-10.  Hill argues that Nurse Lemming is a biased and partial

witness with a motive to lie, i.e. to protect her career, and that it is unlikely that Nurse Lemming would have stayed to treat him had he actually attempted to attack her. Id. at 9-10. While this argument goes more towards credibility, which the Court does not consider at this stage, it also points out factual disputes.

Hill also argues that there is sufficient evidence to show that his injuries were not de minimis. Id. at 11-13. Specifically, Hill notes that he only suffered injuries from Alford's beating, not from the appropriate second use of force, and that the first post use of force documentation was incomplete. Id. at 11-12. Hill further observes that, although Nurse Lemming's post use of force documentation was lacking, she still considered his injuries serious enough to send him for further observation and care in the infirmary, where he stayed for ten days and received sutures on his face and radiology of his upper body. Id. at 12. Finally, Hill lists his injuries, some which are supported by the second post use of force documentation, as multiple deep lacerations to his face, a painful injury to his jaw, a concussion, bruised ribs, injured neck and knee, as well as other minor lacerations and abrasions to Hill's face and head. Id. at 12-13.

Finally, Hill has provided a Statement of Contested Facts (Doc. #23), detailing material facts in dispute. Hill disputes that Alford took him to the nurses' triage station to check his vital signs but rather to beat him in retaliation for disrespect to

his superior in a place where he knew there were no cameras.  Hill disputes that he made any attempt to lunge at Nurse Lemming or to provide any reason for Alford to take him to the ground and claims that Nurse Lemming did witness the beating, even though she stated otherwise in her declaration.  Hill further claims that Nurse Lemming's post use of force documentation did not describe all of Hill's injuries and that the disciplinary report for attempting to assault a staff member was intentionally not processed.

### VI. Law and Conclusions

"The Eighth Amendment prohibits the infliction of cruel and unusual punishment. U.S. Const. amend. VIII.  In considering an Eighth Amendment excessive force claim, [the Court] must consider both a subjective and objective component: (1) whether the 'officials act[ed] with a sufficiently culpable state of mind,' and (2) 'if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation.'"  Tate v. Rockford, 497 F. App'x 921, 923 (11th Cir. 2012) (per curiam) (quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992)).

> In both Fourteenth and Eighth Amendment excessive force claims, whether the use of force violates an inmate's constitutional rights "ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Whitley v. Albers, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986) (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973) (establishing the standard for an Eighth Amendment excessive

> force claim); see Bozeman v. Orum, 422 F.3d
> 1265, 1271 (11th Cir. 2005) (applying the
> Whitley test in a Fourteenth Amendment
> excessive force case).  If force is used
> "maliciously and sadistically for the very
> purpose of causing harm," then it necessarily
> shocks the conscience.  See Brown v. Smith,
> 813 F.2d 1187, 1188 (11th Cir. 1987) (stating
> that the Eighth and Fourteenth Amendments give
> equivalent protections against excessive
> force).  If not, then it does not.

Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007) (per curiam).

The following factors are examined to distinguish between good-faith and malicious or sadistic use of force: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the extent of injury inflicted upon the prisoner; (4) the extent of threat to the safety of staff and inmates; and (5) any efforts made to temper the severity of a forceful response.  Id.

"Although the extent of the injury is a relevant factor in determining the amount of force applied, it is not solely determinative of an Eighth Amendment claim." Muhammad v. Sapp, 494 F. App'x 953, 957 (11th Cir. 2012) (per curiam) (citing Wilkins v. Gaddy, 559 U.S. 34, 37 (2010)).

> When prison officials maliciously and
> sadistically use force to cause harm,
> contemporary standards of decency always are
> violated.  See Whitley, supra, 475 U.S., at
> 327, 106 S.Ct., at 1088.  This is true whether
> or not significant injury is evident.
> Otherwise, the Eighth Amendment would permit
> any physical punishment, no matter how

> diabolic or inhuman, inflicting less than some
> arbitrary quantity of injury.  Such a result
> would have been as unacceptable to the
> drafters of the Eighth Amendment as it is
> today.

Hudson, 503 U.S. at 9.

In this case, the parties have contradictory versions of what happened on February 16, 2014.  On one hand, Alford asserts that he used the minimal amount of force to restrain Hill from lunging at Nurse Lemming, merely taking him to the ground and holding him until other officers arrived.  On the other hand, Hill asserts that, out of revenge for perceived disrespect to Captain Cannon and other officers the day before, Alford coaxed Hill out of his cell, took him to the nurses' triage station because there were no cameras there, and then kicked and beat Hill while Hill was handcuffed and on the ground as payback.

Both parties have submitted contrasting declarations and documents to support their respective positions.  See D. Exs. A, B, C, D; P. Exs. A, B, C, E.[4]  Specifically, the parties disagree over (1) Alford's intent in directing Hill into the nurses' triage

---

[4] This Court expresses no view as to the persuasiveness of either party's evidence but notes that credibility considerations of competing affidavits and supporting materials are inappropriate on summary judgment so long as such evidence is not too incredible to be accepted by reasonable minds.  Reid v. Secretary, Fla. Dep't of Corr., 486 F. App'x 848, 852 (11th Cir. 2012) ("[F]or purposes of summary judgment, there is nothing inherently wrong with 'self-serving testimony,' and it may not be disregarded by the district court in determining whether there is a genuine dispute of fact on a material issue in the case.").

station; (2) whether Alford lunged at Nurse Lemming; (3) the purpose of Alford's use of a force; (4) whether Alford hit Hill after he was subdued; and (5) the extent of Hill's injuries and their causation.   These disputed facts are both material and genuine because they speak directly to the relevant factors to determine if Alford's force was excessive or Hill's injuries were more than <u>de</u> <u>minimis</u>.  If Hill's evidence is believed, a reasonable jury could return a verdict in his favor.  Accordingly, Alford's Motion will be denied because there are genuine issues of material fact that prevent the entry of summary judgment at this stage of the proceeding.

Alford also contends that he is entitled to qualified immunity.  <u>See</u> Motion at 9-12.  Because there are material issues of fact in dispute, the Court cannot address whether Alford is entitled to qualified immunity until these disputed facts have been resolved.

Therefore, it is now

**ORDERED:**

1. Defendant's Motion for Summary Judgment (Doc. #17) is **DENIED.**

2. The parties shall confer regarding the possibility of settlement and notify the Court of the outcome of their settlement negotiations by **October 30, 2015**.  If the parties are unable to settle this matter privately, they shall notify the Court whether

they wish to have this case referred to the assigned Magistrate
Judge for a settlement conference.

**DONE AND ORDERED** at Jacksonville, Florida this 15th day of
September, 2015.

_____
BRIAN J. DAVIS
United States District Judge


tc 9/14
c:
Lester W. Hill
Counsel of Record

- 21 -